There are two views of this case presented by the record and in argument, either of which, it is conceived must be decisive of the question of title adversely to the plaintiffs.
In the first place, the evidence, we think, very clearly shows an abandonment by the plaintiffs of their first location and survey, by a subsequent removal and location of their certificate in Bexar county. This subsequent location and survey, may account for the fact that the field notes of the first survey were not recorded in the office of the Surveyor of Red River county. The certificate was withdrawn and removed to Bexar and the field notes doubtless destroyed. And this is the natural and probable, and we do not doubt, the true reason for the fact that no trace of the survey is to be found among the records of Red River county. And when the fact may be thus satisfactorily accounted for, and is chargeable to the act of the party, and there is nothing in the case to warrant the supposition that any fault is to be imputed to the officers, that conclusion, upon the most obvious principles, must be *Page 446 
adopted, which will not require us to suppose that an officer, entrusted with an important duty, has been guilty of a culpable omission or disregard of duty. Such a supposition is not to be gratuitously adopted. Nor is there any foundation for its adoption in the facts of this case.
But it is objected that the copy of the field notes of the survey, from Bexar, was improperly admitted, and ought not to be regarded; because, the answer alleges that the original field notes were in the General Land Office. This was not the objection urged in the Court below. The ground of objection there assigned was that the certified copy offered in evidence did not "purport to be a copy of the original field notes; but a copy of the copy on record in the Surveyor's office." This objection as to what the copy purported to be, was not well founded in fact. The officer certified that it was "a true copy of the original, as taken from the records of his office."
But it would be, to say the least, quite technical to exclude a copy from the records of the county, to make place for a copy from the General Land Office. Where it is not to be supposed that the party could obtain the original, and is not required, as in this case he certainly was not, to account for its non-production, the copy assumes the place of primary evidence, and it would seem to be quite immaterial whether it be taken from the records of one office or the other.
But if the evidence in question was improperly admitted, there was other evidence in the case sufficient to establish the fact that the certificate had been located in Bexar. If it were not so, how is it that it bore evidence of having been returned to the general Land Office as being surveyed in that county ? The indorsements made on the certificate by the Commissioner of the Land Office, admit of no other possible inference; and unexplained must be regarded as proof of the fact.
But apart from the positive evidence of the fact, the other evidence in the case was amply sufficient to authorize the presumption that the first location had been abandoned. The fact that no steps whatever were taken to perfect the title for *Page 447 
a period of more than fourteen years from the time of the alleged survey; that during all that time no trace appears to have existed of either certificate or survey in the Surveyor's office of Red River county; and that though the survey is alleged to have been made in April, 1838, and there was a continued adverse possession, the pretended right of the plaintiffs is not asserted until the commencement of this suit in October, 1852; these facts admit of no other reasonable supposition, and cannot be rationally accounted for upon any other hypothesis, than that the party, having control of the certificate for the plaintiffs, if in truth it had been located, surveyed and returned to the Surveyor's office as alleged, had withdrawn it from the office for the purpose of locating it elsewhere and had destroyed the field notes. And the present claim of title in the plaintiffs, under all the circumstances, has, it is to be regretted, too much the appearance of an afterthought consequent upon the discovery or belief that the second location was less advantageous than the first, to be regarded with favor. The rights of third persons have intervened, and the facts of this case, it must be admitted, afford much stronger evidence of abandonment of the location, than the facts which were treated by the Court as affording presumptive evidence to that effect in the case of Lewis v. Durst. (1 Tex. R. 415-16.)
To the argument that the survey vested title in the heirs, which could not be divested by the act of the administratrix, it is sufficient to say that the latter had the same right to raise the location for the purpose of making one elsewhere, which she may have deemed more advantageous to herself and the heirs, that she had to apply for and obtain the certificate and make the location in the first instance; and her own interest in the matter of the location was a sufficient guaranty against an abuse of the trust. The interest of the heirs required that she should have the same authority and discretion to control the incipient steps in procuring the title, which any other party might lawfully exercise in obtaining a title to land; being responsible *Page 448 
for a judicious and faithful discharge of the trust. If it were shown that she had combined with others to defraud the heirs, or had abused the trust to their prejudice in removing the location, her acts might be annulled and the original location reinstated, provided innocent third persons were not prejudiced thereby. But there is no pretence of any such combination, or abuse of authority in this instance; and it is very evident that innocent third persons would suffer by permitting the location to be reinstated.
There is another ground on which it is perfectly clear the plaintiffs cannot recover on the title set up in this case. In 1839, the plaintiff, describing herself as administratrix, but signing her own proper name, made her bond to make title to the undivided half of the land; and in 1840, as administratrix, she petitioned the Probate Court, obtained an order to sell, and did sell the interest of the estate in the premises in question, to the party then in possession, under whom the defendant claims.
It is not questioned that this plaintiff could by law dispose of her interest in the land in 1839. But it is objected that there is no evidence that it was done with the assent of her then husband. It was not necessary that his assent should appear by the instrument, (Harvey v. Hill, 7 Tex. R. 591,) and we think, with the learned Judge who presided at the trial, that the silent acquiescence of the husband up to the time of the commencement of this suit, when it is evident he must have been aware of the sale, is sufficient to warrant the presumption, after so great a lapse of time, that he gave his assent in due form, to his wife's disposition of her interest in the land, and to preclude him from averring the contrary. In support of the equitable and just title of the purchaser, such assent, we think, may and ought to be presumed.
It is objected that the copy of the bond was not admissible in evidence, because the original was not acknowledged before the proper officer for recording. But this objection is not supported by the record. The instrument was acknowledged before *Page 449 
a person who signs as Clerk, attested by his seal of office, in November, 1838. And as the Clerk of the County Court was the only Clerk at that time authorized by law to take such acknowledgments, the presumption must be that the person signing was the Clerk of that Court. The recording is, therefore, now to be regarded as legal. (Hart, Dig. Art. 2776.)
The subsequent sale by order of the Probate Court divested the title of the heirs. The petition of the administratrix gave the Court jurisdiction. (Finch v. Edmonson, 9 Tex. R. 504.) All other questions, in the absence of fraud, are concluded by the judgment. In the case of Lynch v. Baxter, (4 Tex. R. 531,) it was determined that it is not essential to the title of the purchaser of property at an administrator's sale, that the record should show a necessity for the sale. The order of sale is conclusive of that question until it be set aside by a proceeding having that object directly in view, and the purchaser, in the absence of fraud, will be protected. (See Grignon v. Astor, 2 Howard, R. 319, 338.)
It is objected that the term of administration had expired previous to the order of sale, and that it does not appear that the time had been extended by order of the Probate Court. Nor is it material to the title of the purchaser, or the validity of the sale, that it should appear. The plaintiff continued to act in the character of administratrix; and her right so to act was recognized by the Probate Court. The Court expressly recognized the sale made by her in this instance. This was sufficient to charge her as administratrix at the date of the order and sale. (Townsend v. Munger, 9 Tex. R. 300.) And if it were necessary to render her acts, legally done in that character, valid and binding on the estate, an extension of the term of administration would be presumed. Where the fiduciary character of one acting as administrator is recognized by the Probate Court, as between the heirs and those dealing with the acting administrator, his authority cannot be drawn in question for the purpose of invalidating his lawful acts, done *Page 450 
in the due course of administration. As respects the rights which third persons may fairly acquire by reason of such acts, he will be deemed to have had competent authority; and his acts will bind those claiming the estate as creditors, distributees or heirs. For third persons dealing with one acting as administrator with the sanction of a Court having jurisdiction to confer the authority, have a right to regard him as acting by virtue of a legal and valid appointment; and, it is said they "are not bound to seek further than him who acts as executor," provided he "is proved to have been acting at the time in the character of executor." (1 Williams on Exrs. 168, 159.) Surely they cannot be required to look further than to see that he is thus acting with the sanction of a Court of competent jurisdiction to confer and revoke the power, and supervise his acts. And therefore if he alienates property of the estate by order of the Probate Court and in the manner prescribed by law, though his appointment was not regular and legal, the title of thebona fide purchaser will nevertheless be good and indefeasible. (lb., see Hart v. Horton, supra.) So, it is said, "It must be observed that whether the pro" bate or letters of administration be void or voidable, if the "grant be by a Court of competent jurisdiction, a bona fide
"payment to the executor or administrator, of a debt due the "estate, will be a legal discharge to a debtor." (Williams on Exrs. 404.)
It would be a dangerous doctrine to hold that the omission of the administrator to obtain an extension of time, or of the Court to make the entry of such order upon its minutes, would have the effect to invalidate acts done by the acting administrator in the due course of administration, to the extent of defeating the title of a bona fide
purchaser. If the mere errors, irregularities and omissions in such matters, by administrators and Probate Courts, should have such effect, no one would dare to purchase; for no purchaser would be secure in his title, and the consequence would be that the property of estates subjected to sale, would be sacrificed. There is no decision *Page 451 
or opinion of this Court which would sanction a doctrine fraught with such consequences. There are no sounder or more salutary adjudications than those which protect the titles fairly acquired by purchase at those sales. In the words of Mr. Justice Baldwin in the case of Grignon's Lessee v. Astor et al, "They are founded on the oldest and most sacred principles of the Common Law. Time has consecrated them. . "* * * * * They are rules of property, on which the "repose of the community depends. Titles acquired under "the proceedings of Courts of competent jurisdiction must be "deemed inviolable in collateral actions, or none can know "what is his own; and there are no judicial sales around which "greater sanctity ought to be placed, than those made of the "estates of decedents, by order of those Courts to whom the "laws of the States confide full jurisdiction over the subjects." (2 Howard, R. 243.)
There are no principles or rules of law which can sanction such injustice and wrong as would result, were the plaintiffs allowed to dispossess the defendant by the title on which they seek to recover in this case.
In the view we have taken of the plaintiff's title, it does not become necessary to revise in detail the several rulings of the Court reserved by bills of exceptions. We are of opinion that there is no error in the judgment, and that it be affirmed.
 Judgment affirmed. *Page 431